# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| MARVIN M. HALL, | |
| Plaintiff, | No. 19-CV-3019-LTS-KEM |
| vs. | **REPORT AND RECOMMENDATION** |
| ANDREW SAUL,<br>Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Marvin M. Hall seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Hall argues that the administrative law judge (ALJ) committed several errors at steps four and five of the sequential process: in discounting the opinion of Hall's treating neurosurgeon, in making a residual functional capacity (RFC) determination unsupported by medical evidence, and in failing to resolve an inconsistency between the testimony of the vocational expert (VE) and the Dictionary of Occupational Titles (DOT). Hall also raises (for the first time) an Appointments Clause challenge in reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). I recommend **reversing** the ALJ's decision and **remanding for further proceedings**.

## I.    BACKGROUND

The parties submitted the following joint summary of Hall's relevant medical treatment:

> On May 11, 2015, Mr. Hall saw his primary care physician concerning his low back pain and sciatica symptoms. The doctor

recommended using ibuprofen up to 3 times daily for pain and ordered an MRI and x-ray of Mr. Hall's lumbar spine. On May 27, 2015, the imaging was performed. The MRI showed mild progression of multilevel spondylotic changes throughout the lumbar spine since 2009. On June 8, 2015, Mr. Hall saw Dr. David Beck, M.D., a neurosurgeon, concerning his back and right leg pain. A physical examination showed normal strength in the upper and lower extremities and negative straight leg raising. Dr. Beck noted: "MRI scan shows severe degeneration at L3-4, L4-5 and L5-S1…. I explained to Marvin that he has a very abnormal MRI." Dr. Beck recommended a Medrol pack and back exercises, and then an epidural steroid injection if he received transient relief. On June 26, 2015, an epidural steroid injection was performed at the L4-L5 level of Mr. Hall's lumbar spine. On July 22, 2015, Mr. Hall returned to Dr. Beck and reported the epidural steroid injection had not helped. Dr. Beck explained:

> Basically his back is very worn out from L3-Sl. To do anything for him surgically he would need an L3-Sl fusion. I think the likelihood of getting back into the work force following this is almost zero. He is comfortable doing nothing and sitting around. At this point I don't recommend doing any surgery.

Hall refused to take prescribed medication, Gabapentin. On December 3, 2015, Dr. Beck again noted Mr. Hall was miserable and in pain. Dr. Beck explained:

> Marvin is incapable of doing any meaningful work. He hurts to lift or carry any amount of weight. Standing and walking cause significant pain. He does get relief lying down. He cannot stoop, kneel, crawl or bend without pain. He can handle objects, see, hear, speak. Travel is not a problem. . . .

On September 20, 2016, Mr. Hall saw primary care concerning [a] spot near his eye. On January 23, 2017, Mr. Hall saw primary care [regarding] a cellulitis concern. . . . .

On June 28, 2017, Mr. Hall saw a primary care provider concerning his intermittent and worsening right foot and calf pain and other issues. On August 18, 2017, Mr. Hall returned to primary care and reported his back-pain symptoms. Mr. Hall explained symptoms were aggravated by bending, standing and sitting in an [im]proper chair. The provider ordered a lumbar spine x-ray. The x-ray showed a slight increase in dextroconvex scoliosis of Mr. Hall's lumbar spine[;] moderate to advanced degenerative changes of the lumbar spine, most prominent at L3-L4 and L4-L5[;] and grade 1 anterolisthesis of L3 on L4. On August 22, 2017, Mr. Hall saw primary care concerning his back pain. He explained his pain was 8 out of

2

10 in his lower back and radiated to the right great toe to right knee. He explained his pain was aggravated by bending, standing and sitting in an improper chair. The provider referred Mr. Hall to physical therapy. Mr. Hall began physical therapy on August 25, 2017. On August 29, 2017, Mr. Hall underwent an MRI of his lumbar spine. On August 31, 2017, Mr. Hall returned to primary care concerning his back. The provider noted: "Offered 2nd opinion Neurosurgery Consult – Pt declined. The patient understands that his findings have progressed since his last MRI and that their decision may be different."

On September 8, 2017, Mr. Hall was discharged from physical therapy. The physical therapist noted Mr. Hall had been angry, yelling and swearing at the physical therapist at the last appointment, then stormed out of the office, and later cancelled remaining appointments. On September 19, 2017, Mr. Hall saw primary care for shortness of breath concerns.

Doc. 12 (citations omitted).

Hall filed the current application for SSI benefits on April 18, 2016, when he was 57 years old. Doc. 12. He alleged disability as of April 1, 2016, due to "[w]orsening scoliosis and various back problems." AR 61.[1] Since his graduation from high school in 1977, the most money Hall has earned in a year is $7,396, and there were several years in which Social Security records reflect no earnings (including 1983, 1990 to 1992, 1994, 2000, and 2003 to 2004). *See* AR 172, 184. Hall last worked as a shuttle driver from May 18, 2005, to October 21, 2005, and he reported stopping this work because of his conditions. AR 183, 192, 197. Hall previously filed for disability benefits in January 2006, March 2009, June 2011, and November 2015, all but one of which were denied on initial review and not appealed further. AR 62.

Hall's current SSI application was denied on initial review on August 31, 2016, and on reconsideration on November 4, 2016. AR 61-84. In connection with the initial review, Hall came in for a face-to-face interview, where he was observed to walk with a limp. AR 180. The interviewer also noted Hall became "very upset" when the interviewer asked why Hall had not appealed the recent denial of a prior disability

---

[1] "AR" refers to the administrative record below, filed at Docs. 9-2 to 9-7.

3

application, which had been denied due to Hall's failure to complete paperwork in a timely manner. *Id.* The Social Security Administration ordered a consultative examination, and Hall met with Brian Allen, DO, for the examination on July 30, 2016. AR 279-82. Dr. Allen diagnosed Hall with "low back pain, secondary to degenerative disc disease," and "left knee pain, secondary to degenerative joint disease." AR 282. He did not opine as to Hall's functional limitations (but did note normal gait on objective examination). *See* AR 279-82. Nonexamining state agency medical consultants Tracey Larrison, DO, and Donald Shumate, DO, evaluated Hall's physical RFC[2] in August 2016 and November 2016, respectively. AR 67-69, 79-81. They both determined Hall could perform light work[3] with additional limitations. *Id.* Based on Dr. Larrison's and Dr. Shumate's determination of Hall's RFC, it was found that Hall could return to his past work as a driver as actually performed in 2005. AR 69-70, 82-83.

Hall requested review before an ALJ. Prior to the administrative hearing, on March 26, 2018, Dr. Beck completed a form evaluating Hall's functional restrictions. AR 324-25. The ALJ held an administrative hearing by video on April 18, 2018, at which Hall and a VE testified. AR 15, 28-29. On August 21, 2018, the ALJ issued a written decision following the familiar five-step process outlined in the regulations[4] to determine Hall was not disabled from April 18, 2016, through the date of the decision.

---

[2] RFC means "the most that a claimant can do despite her limitations." **Sloan v. Saul**, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. § 416.945(a)(1)**).

[3] *See* **20 C.F.R. § 416.967**.

[4] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." **King v. Astrue**, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 416.920**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." **Goff v. Barnhart**, 421 F.3d 785, 790 (8th Cir. 2005) (quoting **Eichelberger v. Barnhart**, 390 F.3d 584, 591 (8th Cir. 2004)).

4

AR 15-23.  The ALJ found that Hall suffered from two severe impairments:  lumbar degenerative disk disease and right elbow epicondylitis.  AR 17.  The ALJ determined that despite his impairments, Hall retained the RFC "to perform medium work . . . except he can occasionally stoop or climb ladders, ropes, or scaffolds, as well as occasionally reach overhead with the right dominant upper extremity."  AR 18; *see* **20 C.F.R. § 416.967(c)**.[5]  In forming his assessment, the ALJ assigned little weight to the limitations Dr. Beck noted in a letter from December 2015, little weight to Dr. Beck's March 2018 opinion, and little weight to the nonexamining state agency medical consultants' opinions, finding Hall less limited than all the medical opinions in the record.  AR 20.  The ALJ found (at step four) that Hall could return to his past relevant work as a driver as he actually performed it and as it is generally performed in the national economy.  AR 21.  Alternatively, the ALJ found at step five that other work existed in significant numbers in the national economy that Hall could perform, including taxi driver, hand packager, and dietary aide.  AR 22.  The ALJ found Hall could perform the taxi driver position (semiskilled work) based on transferable skills Hall acquired when working as a driver in 2005.  *Id.*

Hall appealed.  The Appeals Council denied Hall's request for review on March 25, 2019 (AR 1-3), making the ALJ's decision the final decision of the Commissioner.  *See* **20 C.F.R. § 416.1481**.  Hall filed a timely complaint in this court seeking judicial review of the Commissioner's decision (Docs. 1, 4).  *See* **20 C.F.R. § 422.210(c)**.  The parties briefed the issues (Docs. 13, 18, 19), and the Honorable Leonard T. Strand, Chief United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

---

[5] "Occasionally" is a term of art meaning "occurring from very little up to one-third of" an eight-hour workday.  *See, e.g.*, **Social Security Ruling 96-9P**, 61 Fed. Reg. 34478, 34480 (July 2, 1996).

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Hall challenges the ALJ's RFC determination, arguing that the ALJ did not give a good reason for discounting Dr. Beck's opinions and that the ALJ improperly substituted his opinion for those of the medical experts. Even if the ALJ's RFC determination were not erroneous, Hall argues that the ALJ committed errors at steps four and five. Hall argues the ALJ should have classified Hall's past work as a shuttle driver in 2005 as an "unsuccessful work attempt," not "past relevant work." Hall also argues that the ALJ erred in failing to resolve an inconsistency between the VE's testimony and the DOT: the positions the VE identified for Hall to perform all require frequent or constant reaching per the DOT, which Hall argues is inconsistent with his RFC limitation to only occasional overhead reaching with his right arm. Finally, Hall argues that the ALJ's appointment to that position violates the Appointments Clause of the United States Constitution.

### A. Weight to Treating-Source Opinion

When determining a claimant's RFC, the ALJ considers medical opinions "together with the rest of the relevant evidence." **20 C.F.R. § 416.927(b)**. "The ALJ must give 'controlling weight' to a treating [source's] opinion if it 'is well-supported by

6

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* **20 C.F.R. § 416.927(c)(2)**. "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016). The ALJ considers the following factors to determine the weight to assign any opinion assessing a claimant's RFC:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting the current **20 C.F.R. § 416.927(c)**).

Hall challenges the weight the ALJ assigned to the opinions of Dr. Beck, Hall's treating neurosurgeon. In support of Hall's prior application for disability, Dr. Beck submitted an opinion in December 2015, a few months before Hall's alleged onset date for the current application. AR 277. Dr. Beck noted:

> [Hall] is incapable of doing any meaningful work. He hurts to lift or carry any amount of weight. Standing and walking cause significant pain. He does get relief lying down. He cannot stoop, kneel, crawl or bend without pain. He can handle objects, see, hear, speak. Travel is not a problem.

*Id.*

The ALJ assigned this opinion "little weight" (describing it as an opinion from Hall's "consulting neurosurgeon" specialist). AR 20. The ALJ noted that the limitations in Dr. Hall's opinion "appear[ed] to be purely based on the claimant's subjective complaints rather than the objective medical evidence." *Id.* The ALJ also noted that "despite the claimant's significant findings upon imaging studies, the specialist advised

7

against surgery and confirmed that the claimant was neurologically intact." *Id.* The ALJ also pointed to "the claimant's gait and strength," which "has been consistently normal," and his "relatively minor range of motion and sensory deficits." *Id.*

Substantial evidence supports the ALJ's decision to discount Dr. Beck's December 2015 opinion. Hall argues that because Dr. Beck noted in his opinion that Hall was "neurologically intact" and that an MRI scan showed "severe degeneration of his back at all levels," Dr. Beck's opinion was based on objective evidence, not Hall's subjective complaints. *See* AR 277. I disagree. The phrasing of the limitations noted in Dr. Beck's opinion (based on "pain" and "hurt" to Hall) support the ALJ's determination that Dr. Beck based the limitations on Hall's subjective complaints, which the ALJ declined to fully credit (a finding Hall does not challenge). An ALJ may decline to give controlling or substantial weight to a treating source's medical opinion that relies on a claimant's discredited subjective complains. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017); *Reece*, 834 F.3d at 906, 909-10; *Julin v. Colvin*, 826 F.3d 1082, 1085, 1089 (8th Cir. 2016); *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014); *Finch v. Astrue*, 547 F.3d 933, 936-37 (8th Cir. 2008); *cf. Papesh*, 786 F.3d at 1132-33 (ALJ may not discount treating-source opinion based on subjective complaints if ALJ's credibility determination is not supported by substantial evidence). This reason, standing alone, supports the ALJ's decision to discount Dr. Beck's December 2015 opinion.

Dr. Beck submitted another opinion dated March 26, 2018, completing a form answering yes-and-no questions from Hall's attorney. AR 324-25. Dr. Beck answered "yes" in response to questions asking whether Hall would "be limited to sitting no more than 4 hours total in an 8 hour workday"; whether Hall "should sit no more than 45 minutes every hour followed by a 10-15 break to stand/walk or lie down"; whether Hall should "be limited to lifting/or carrying no more than 10 [pounds] occasionally"; whether Hall "should stand/walk no more than 30 minutes every hour and for a total of no more than 4 hours in an 8 hour workday"; whether Hall would "work at a slow pace

8

more than 20% of an 8 hour workday"; and whether Hall would "be absent from work 2-3 times or more per month due to pain and fatigue." AR 324-25. Dr. Beck also answered "yes" in response to a question asking if Hall would need frequent unscheduled breaks; and in response to the follow-up question asking "[h]ow often and how long," Dr. Beck wrote every two hours (presumably referring to how often Hall would need breaks and not responding to the question asking how long the breaks should be). AR 325.

The ALJ assigned little weight to Dr. Beck's 2018 opinion. AR 20. The ALJ noted "the absence of substantial treatment for the claimant's alleged back pain" and that Hall "reported he obtained some relief from over the counter medication and chiropractic care." *Id*. The ALJ also considered that "Dr. Beck d[id] not provide an objective basis for his responses to an overtly leading questionnaire that was prepared by the claimant's representative on the claimant's behalf." *Id*. Overall, the ALJ indicated that "there is not sufficient evidence to suggest that the claimant's residual symptoms rise to a level of severity that would entirely preclude him from engaging in basic work activity," as found by Dr. Beck. *Id*.

Hall argues that substantial evidence does not support the ALJ's determination that ibuprofen relieved his symptoms, pointing to the disability report he submitted to the Social Security Administration claiming ibuprofen offered "slight and temporary" relief. AR 232. The ALJ could instead rely on a May 2015 treatment note in which a provider "[s]uggested that he use the ibuprofen up to 3 times daily for pain," and Hall indicated one tablet of ibuprofen "takes care of [his] pain for a day and a half." AR 266. Hall also argues that the record shows chiropractic treatment was not effective, but the treatment records he cites do not support this proposition. *See* AR 266 (Hall reported in May 2015 that "chiropractic care . . . take[s] care of his pain for a short time"); AR 273 (a June 2015 treatment note reflects in the history of present illness section that Hall "has tried chiropractic and muscle relaxants"). The ALJ could also consider Hall's lack of

treatment and the form of Dr. Beck's opinion—a form asking questions such as whether Hall could sit for no more than four hours is far more leading than a form asking open-ended questions such as the length of time a claimant can sit. *See Reed v. Barnhart*, 399 F.3d 917, 921-22 (8th Cir. 2005) (ALJ may consider form of opinion, among other factors). Overall, the ALJ gave good reasons supported by substantial evidence for the weight assigned to Dr. Beck's opinions. I recommend affirming the ALJ's decision to discount Dr. Beck's opinions.

### B. Some Medical Evidence

When determining a claimant's RFC, the ALJ must consider "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The ALJ's RFC determination must be supported by at least some medical evidence that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). An ALJ may not "play doctor" and "substitute his opinions for those of the physician[s]." *Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017) (quoting *Pate–Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009); *Finch*, 547 F.3d at 938).

Here, the record contained medical opinions evaluating Hall's physical RFC from treating neurosurgeon, Dr. Beck, and from the nonexamining state agency medical consultants, Dr. Larrison and Dr. Shumate. AR 67-68, 79-81, 277, 324-25. All three doctors opined that Hall could stand or walk for a total of no more than four hours in an eight-hour workday. AR 67, 79, 325. The ALJ, by contrast, found that Hall could perform medium work, which requires the ability to stand or walk for six hours a day. AR 18; **Social Security Ruling (SSR) 83-10**, 1983 WL 31251, at *6 (Soc. Sec. Admin. Jan 1, 1983). The doctors also all imposed greater lifting restrictions than the ALJ—Dr.

10

Beck limited Hall to occasionally lifting ten pounds; Drs. Larrison and Shumate limited Hall to occasionally lifting twenty pounds and frequently lifting ten pounds; and the ALJ found (by nature of finding Hall could perform medium work) that Hall could frequently lift twenty-five pounds.[6]  AR 18, 67, 79, 325; *see* **20 C.F.R. § 416.967(c)**.  The ALJ also did not limit Hall's ability to crouch—an "important" ability for the full range of medium work—unlike Drs. Larrison and Shumate, who found Hall could only occasionally crouch.  AR 18, 67, 80; **SSR 83-10**, 1983 WL 31251, at *6.

I agree with Hall that some medical evidence does not support the ALJ's RFC determination.  The ALJ may not impose fewer limitations than found in all the medical-opinion evidence and thereby formulate his own medical opinion.  *See Peterson v. Colvin*, No. C14-4110-LTS, 2016 WL 1611480, at *11 (N.D. Iowa Apr. 21, 2016) (holding that no medical evidence supported the ALJ's RFC finding that the claimant could sit or stand for thirty minutes at a time when "no medical source or other source provided an opinion that [claimant] can sit or stand for more than 15 minutes at once"); *cf. Julin*, 826 F.3d at 1089 (some medical evidence supported the ALJ's RFC determination when it incorporated some limitations found by the treating source and some limitations found by the state agency consultants); *Kamann v. Colvin*, 721 F.3d 945, 948-51 (8th Cir. 2013) (some medical evidence supported the ALJ's RFC finding when it was consistent with the state agency consultant's opinion); *Stormo v. Barnhart*, 377 F.3d 801, 806-807 (8th Cir. 2004) (same); *Anderson v. Shalala*, 51 F.3d 777, 779-80 (8th Cir. 1995) (same); *cf. also Krogmeier v. Barnhart*, 294 F.3d 1019, 1023-24 (8th Cir. 2002) (some medical evidence supported the ALJ's RFC finding when it was consistent with the consultative examiner's opinion); *Strongson v. Barnhart*, 361 F.3d 1066, 1070-72 (8th Cir. 2004) (same).  Especially in light of Hall's MRI scans showing severe degenerative changes in his spine, the ALJ could not substitute his interpretation

---

[6] Frequently means one-third to two-thirds (or six hours) of an eight-hour day.  *See, e.g.*, **SSR 83-10**, 1983 WL 31251, at *6.

of the medical evidence over the interpretation of all three doctors who submitted opinions evaluating Hall's RFC. I recommend finding that the ALJ erred in formulating Hall's RFC.

Hall argues that at a minimum, the ALJ should have adopted the limitations found by the state agency consultants. I agree. As Hall notes, given his "advanced age," with this RFC, he would be considered disabled under the grids unless he was either able to return to his past relevant work or had gained transferable skills from his past relevant work. *See* **20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 200.00, 202.00, 202.06, 202.07**. The VE testified that a person with the RFC found by the state agency consultants could not perform Hall's 2005 shuttle driver position either as categorized by the DOT or "as performed," since it "required up to eight hours [of] sitting" (the state agency consultants limited Hall to six hours of sitting; Dr. Beck limited Hall to four hours of sitting). AR 54-56, 67, 79, 325. The VE also testified that no positions involving transferable skills existed given a person with the RFC found by the state agency consultants. AR 55. Nevertheless, because further development of the record is needed regarding Hall's past relevant work (as will be discussed further below), I recommend remanding for further proceedings, rather than for an award of benefits.

### C. Past Relevant Work or Unsuccessful Work Attempt

At step four, the ALJ determines whether the claimant can perform his "past relevant work" based on his RFC (without consideration of age or education). **20 C.F.R. §§ 416.920(f)**, **416.960(b)(3)**. The regulations direct a finding of "not disabled" if the claimant's RFC allows him to perform his past relevant work. *Id.* "Past relevant work" is defined as "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." **20 C.F.R. § 416.960(b)(1)**.

12

The ALJ found that Hall's past relevant work included working as a shuttle driver from May to October 2005. AR 21. The parties agree that Hall performed this work within the last 15 years and that he worked long enough to learn to do the job, since the DOT indicates working as a driver has a "specific vocational preparation" (SVP) level of three, which means it takes one to three months to learn. *See* **DOT § 913.663-018**. The parties dispute whether Hall's work as a shuttle driver constituted substantial gainful activity (as required to be past relevant work).

At step one of the disability determination, the ALJ determines whether the claimant engaged in "substantial gainful activity" during the period of alleged disability—if so, the ALJ must find the claimant not disabled. *See* **20 C.F.R. §§ 416.920(a)(4)(i)**, **416.971**. Whether work constitutes "substantial gainful activity" is based primarily on the claimant's earnings from the work. *See* **20 C.F.R. § 416.974(a)(1)**; *see also* **20 C.F.R. §§ 416.910, 416.972**. But under the "unsuccessful work attempt" exception, work the claimant has done, even if it meets the earnings requirements, "will not show that [the claimant is] able to do substantial gainful activity if, after working for a period of 6 months or less, [the claimant] w[as] forced by [his] impairment to stop working." **20 C.F.R. § 416.974(c)(1)**.

Hall argues that the ALJ erred in failing to further develop the record regarding whether the five months Hall worked as a shuttle driver in 2005 constituted an "unsuccessful work attempt." Hall's attorney argued at the administrative hearing that the shuttle driver position should be so classified, and the ALJ responded:

> I understand that's your theory. I don't believe it is an unsuccessful work attempt since we have alleged onset date of April 1st, 2016. I mean if you want to make argument that it should be considered an unsuccessful work attempt, but it's well prior to the alleged onset date and my understanding -- well, let me get to [the VE], but if he keeps the classification at [SVP] level 3, haven't necessarily heard anything that's going to change that. In order to do [SVP] level 3, it requires only 30 days up [to] and including three months, so he certainly had the job long enough to meet the [SVP] level required.

13

AR 39.  The ALJ did not further address (at the hearing or in his decision) whether Hall's work as a shuttle driver constituted an unsuccessful work attempt.  *See* AR 21.

The Commissioner seems to suggest (as did the ALJ) that as long as a claimant worked at a position long enough to learn it, it may constitute past relevant work—even if it would otherwise meet the definition of an unsuccessful work attempt.  I agree with Hall that this conflates the requirement that past relevant work must "last[] long enough for [the claimant] to learn to do it" with the separate requirement that past relevant work be "substantial gainful activity"—which an unsuccessful work attempt is not.  Other courts agree and have analyzed whether work prior to the disability period constitutes an "unsuccessful work attempt" such that it is not "past relevant work."  *See McNeely v. Comm'r of Soc. Sec.*, No. 2:17-cv-00335-KJM-KJN, 2019 WL 325270, at *1-2 (E.D. Cal. Jan. 25, 2019) (remanding for further development of the record regarding whether claimant's one-month stint as a hand packager six years prior to the alleged onset date constituted an unsuccessful work attempt and therefore not past relevant work, despite the claimant's employment lasting long enough to learn the job);[7] *Cheney v. Comm'r of Soc. Sec.*, No. 5:10-CV-174, 2011 WL 1839785, at *4-7 (D. Vt. Apr. 19, 2011) (holding that despite claimant's prior "jobs last[ing] long enough for [the claimant] to learn to do them," the ALJ erred in failing to develop the record regarding whether the work constituted "an unsuccessful work attempt" for purposes of step four because "[w]ork activity does not qualify as [substantial gainful activity], or 'past relevant work,' if it is found to be an 'unsuccessful work attempt"), *report and recommendation adopted,* 2011 WL 1838717 (May 13, 2011); *Seitz v. Astrue*, No. 3:08-CV-355-HEH, 2009 WL 2392159, at *4, *7-8 (E.D. Va. Aug. 4, 2009) (adopting report and recommendation) (noting that "certain work attempts, which are classified as 'unsuccessful work attempts,' will not be considered as [substantial gainful activity] for purposes of the step four

---

[7] Some facts in the parenthetical are taken from the underlying report and recommendation, 2018 WL 3869629 (Aug. 13, 2018).

analysis"; and analyzing whether claimant's work from 1991, four years prior to the onset date, constituted an unsuccessful work attempt, but ultimately finding it did not); *Rikard v. Astrue*, No. 2:07-CV-162-P-A, 2009 WL 736210, at *1, *3 (N.D. Miss. Mar. 18, 2009) (noting that "[w]hen a claimant has performed work for a very short amount of time and has left the field after a very short period of time due to inability to adapt to the work, this period of work generally does not qualify as past relevant work," but "rather, . . . an unsuccessful work attempt," and holding that substantial evidence did not support the ALJ's determination that work performed for two to three months about four years before the alleged disability onset date constituted past relevant work); *but see Lemus v. Colvin*, No. 8:13CV226, 2014 WL 3058344, at *15 & n.9 (D. Neb. July 7, 2014) (declining to address the Commissioner's argument that "the concept of [an unsuccessful work attempt] only applies to Step One" such that "work outside the alleged disability period c[annot] be considered [an unsuccessful work attempt]").

The regulation addressing past relevant work further supports that the ALJ should consider whether prior work constitutes an "unsuccessful work attempt," even if years prior to the alleged onset date. That regulation states: "[i]f [a claimant] ha[s] no work experience or worked only off-and-on for brief periods of time during the 15-year period, [the Social Security Administration] generally consider[s] that these do not apply" as past relevant work. **20 C.F.R. § 416.965(a)**. I find that work that otherwise meets the definition of an "unsuccessful work attempt" does not constitute "past relevant work" for purposes of step four—regardless of whether the "unsuccessful work attempt" occurred during the disability period.

That a claimant worked at a job for less than six months does not automatically mean the work constituted an unsuccessful work attempt—the claimant must have been out of work for at least thirty days before the "unsuccessful work attempt," and the job constituting the "unsuccessful work attempt" must have ended "because of [the claimant's] impairment." *See* **20 C.F.R. 416.974(c)(1)-(3)**. Here, the evidence shows

that Hall did not work for at least two years before beginning the shuttle driver position in May 2005.  *See* AR 172, 184.  In addition, Hall provided evidence that this job ended due to his back impairment:  he reported in his disability report in May 2016 that he quit working in 2005 "because of [his] condition(s)," and he testified at the administrative hearing in April 2018 that he stopped working because "[t]he pain in [his] back was getting more severe because of the sitting in the van."  AR 35, 183.

The Commissioner argues that this evidence fails to establish that the shuttle driver job ended due to Hall's impairments, noting that more than ten years passed between the job's ending in October 2005 and Hall's alleged onset date in April 2016, as well as pointing to the lack of corroborating medical records from 2005 in the administrative record.  Although the ALJ could refuse to rely solely on Hall's account of the reason his work as a shuttle driver ended, the ALJ could not ignore Hall's testimony in the absence of conflicting evidence to the contrary. SSR 84-25 provides:

> In considering why a work effort ended . . . , [the Social Security Administration] do[es] not rely solely on information from the worker. Therefore, if impartial supporting evidence is not already a part of the claims file, confirmation with the employer is required.  If the information from the employer is inconclusive or if none is available, the reason for work discontinuance or reduction may be confirmed with the person's physician or other medical source.   After being apprised of the circumstances, the physician or other medical source could state whether, in his or her opinion or according to the records, the work discontinuance . . . was due to the impairment.

1984 WL 49799, at *3 (Soc. Sec. Admin. Jan. 1, 1984).  SSR 84-25 supports that the ALJ should have further developed the record here regarding the reasons that Hall's work as a shuttle driver ended in 2005.  *See also McNeely,* 2019 WL 325270, at *1-2; *Cheney*, 2011 WL 1839785, at *5-7.[8]  Although there was a large gap of time between the end of

---

[8] That Hall testified his work as a shuttle driver ended due to his back impairment and that he has not worked since distinguishes this case from others in which courts determined remand for further development of the record was not required.  *Cf. Knudsen v. Colvin*, No. 2:14-cv-155-

Hall's employment and his alleged onset date, Hall first applied for disability benefits in January 2006, shortly after his shuttle driver employment ended (as Hall's representative pointed out to the ALJ at the hearing). AR 43-44, 62. In addition, Hall's earnings records show he has not worked since the shuttle driver position ended in 2005.

Substantial evidence does not support the ALJ's determination that Hall's past work as a shuttle driver constituted past relevant work, rather than an unsuccessful work attempt. The ALJ should have further developed the record regarding whether Hall's past work as a shuttle driver constituted an unsuccessful work attempt and specifically, whether Hall's employment ended due to his back impairment. On remand, the ALJ may contact Hall's past employer; obtain Hall's medical records from 2005; or obtain opinion evidence from Hall's medical providers regarding Hall's reasons for ending his employment. *See* **SSR 84-25**, 1984 WL 49799, at *3.

On remand, the ALJ may also develop the record further regarding whether Hall has any other past relevant work. Work performed in the fifteen years prior to the disability period includes all work performed on or after April 18, 2001. *See* **20 C.F.R. § 416.960(b)(1)**. Hall's earnings records reflect earnings in 2001, 2002, and 2005, but no other years in the relevant time period. AR 172. In Hall's work history report, he reported working twenty hours a week as a car wash attendant from 1998 to 2001 and working fifty-six hours a week as a cab driver in 2001 (as well as working as a shuttle driver in 2005). AR 184, 193, 195. The VE originally included taxi driver in Hall's past relevant work (AR 251), but the ALJ omitted it based on Hall's testimony that it was performed more than fifteen years ago—Hall originally testified that he worked as a taxi

---

JHR, 2015 WL 1505689, at *10 & n.5 (D. Me. Apr. 1, 2015) (ALJ under no duty to develop record further when claimant offered no evidence—testimony or otherwise—that position ended due to impairment); *Lemus,* 2014 WL 3058344, at *15-16 (ALJ under no duty to develop record further when claimant indicated she stopped working as a "flagger," a seasonal position, because the project ended); *Seitz*, 2009 WL 2392159, at *9 (noting plaintiff's testimony did not "establish[] that his impairments were the reason he terminated his employment").

driver in 2002, but when his attorney pointed out his earnings in 2002 were from Avery Properties and Express Shuttle, Hall stated neither of those companies were his employers as a taxi driver and agreed he worked as a taxi driver prior to 2002. AR 37-38. The record is not clear about what jobs, if any, Hall performed in 2001 and 2002; the length of time Hall held these jobs; and whether Hall held these jobs after April 18, 2001. On remand, the ALJ is free to develop the record further regarding Hall's earnings in 2001 and 2002.

I recommend finding that substantial evidence does not support the ALJ's determination that Hall's work as a shuttle driver constituted past relevant work and remanding for further proceedings.

### D. Inconsistency Between the VE Testimony and the DOT

At step five, the ALJ evaluates whether the claimant can perform other work that "exist[s] in significant numbers in the national economy (either in the region where [the claimant] lives or in several regions in the country)." **20 C.F.R. § 416.960(c)(1)**. The Commissioner bears the burden of proving that jobs exist in significant numbers that someone with the claimant's age, education, work experience, and RFC can perform. *See Gieseke v. Colvin*, 770 F.3d. 1186, 1189 (8th Cir. 2014); **20 C.F.R. § 416.960(c)(2)**. The Commissioner may meet this burden through testimony by a VE, but "VE testimony that conflicts with the DOT 'does not constitute substantial evidence upon which the Commissioner may rely to meet [its] burden" if the inconsistency is unexplained by the VE. *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014).

> Under [SSR] 00-4p, the ALJ must "ask about any possible conflict" between VE evidence and "information provided in the DOT." . . . If there is an "apparent unresolved conflict" between VE testimony and the DOT, the ALJ must "elicit a reasonable explanation for the conflict" and "resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the DOT information."

*Id.* at 989-90 (alterations in original) (quoting **SSR 00-4p**, 65 Fed. Reg. 75759, 75760 (Dec. 4, 2000)).

The Commissioner concedes that an "apparent conflict" exists between Hall's ability to only occasionally reach overhead with his right arm and the DOT descriptions of the shuttle driver, taxi driver, hand packager, and dietary aide positions, which all require frequent or constant reaching. *See* Doc. 18 at 16. The Commissioner argues that any error is harmless, however, because "the ALJ properly found that plaintiff could return to his past relevant work as a shuttle driver as *actually performed*, not as described in the DOT." Doc. 18 at 17. I have already found that substantial evidence does not support the ALJ's determination that Hall's work as a shuttle driver constituted past relevant work, rather than an unsuccessful work attempt. I note, however, that Hall reported that the driver position as actually performed in 2005 required zero reaching. AR 197. For this reason, if the district court were to disagree that remand is required for the reasons already discussed (errors related to some medical evidence and past relevant work), I would not find that the DOT inconsistency requires remand.

### E. Appointments Clause Challenge

The Appointments Clause of the Constitution requires that principal officers be appointed by the president with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, . . . the Courts of Law, or . . . the Heads of Departments." **U.S. Const. art. II, § 2, cl. 2**; *see also Lucia*, 138 S. Ct. at 2051 & n.3. The Appointments Clause does not apply to "non-officer employees—part of the broad swath of 'lesser functionaries' in the Government's workforce." *Lucia*, 138 S. Ct. at 2051.

The Supreme Court held in *Lucia* that the five ALJs for the Securities and Exchange Commission (SEC) were inferior officers subject to the Appointments Clause. *Id.* Hall argues that following the reasoning in *Lucia*, Social Security ALJs are inferior

19

officers subject to the Appointments Clause, and that his case should be remanded for a new hearing before a constitutionally appointed ALJ. Hall did not raise this issue at any point during the administrative proceedings. Thus, the Commissioner argues that Hall has forfeited his Appointments Clause challenge.

Every judge in the Northern District of Iowa has addressed this issue and held that a claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration (and have declined to excuse the forfeiture). *See Rollie v. Saul*, No. 18-CV-129-CJW-KEM, 2019 WL 4673220, at *10 (N.D. Iowa Sept. 25, 2019) (Williams, J.); *Murphy v. Berryhill*, No. 18-CV-61-LRR, 2019 WL 1140235, at *17 (N.D. Iowa Mar. 12, 2019) (Roberts, J.), *report and recommendation adopted*, 2019 WL 2372896 (N.D. Iowa Apr. 10, 2019), *appeal filed*, No. 19-2202 (8th Cir. June 12, 2019); *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *4-6 (N.D. Iowa Sep. 14, 2018) (Strand, C.J.); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018) (Reade, J.), *appeal filed*, No. 18-3422 (8th Cir. Nov. 9, 2018). Indeed, although the Eighth Circuit has not yet addressed this issue (appeals are pending), almost every district court in the Eighth Circuit has ruled in the Commissioner's favor and denied Appointments Clause challenges raised for the first time on judicial review as forfeited. *See Turner v. Saul*, No. 4:18-CV-607-RLW, 2019 WL 4246841, at *4 (E.D. Mo. Sept. 6, 2019); *Cooper v. Saul*, No. 8:18-CV-409, 2019 WL 4059758, at *12 (D. Neb. Aug. 28, 2019); *Dixon v. Berryhill*, No. 8:18CV343, 2019 WL 3253950, at *8 (D. Neb. July 19, 2019); *Long M. v. Berryhill*, No. 18-CV-862 (ECW), 2019 WL 2163384, at *8 (D. Minn. May 17, 2019); *Hernandez v. Berryhill*, No. 8:18CV274, 2019 WL 1207012, at *6 (D. Neb. Mar. 14, 2019); *Kimberly B. v. Berryhill*, No. 17-CV-5211 (HB), 2019 WL 652418, at *15 (D. Minn. Feb. 15, 2019); *Audrey M.H. v. Berryhill*, No. 17-CV-4975 (ECW), 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); *Catherine V. v. Berryhill*, No. CV 17-3257 (DWF/LIB), 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019*); *Bowman v. Berryhill*, No. 4:18-CV-

157 RP-HCA, 2018 WL 7568360, at *12 (S.D. Iowa Dec. 13, 2018); *but see Wang v. Saul*, No. 18-CV-3144 (DTS), Doc. 21-1 (D. Minn. March 12, 2020).

The vast majority of district courts have held that a claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration. *See, e.g., Morrow v. Berryhill*, No. C 18-04641 WHA, 2019 WL 2009303, at *4 (N.D. Cal. May 7, 2019); *Kline v. Berryhill*, No. 3:18-CV-00180-FDW, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019); *Hutchins v. Berryhill*, No. 18-10182, 2019 WL 1353955, at *3 (E.D. Mich. March 26, 2019) (rejecting report and recommendation); *Diane S.P. v. Berryhill*, No. 4:17cv143, 2019 WL 1879256, at *23 (E.D. Va. Mar. 21, 2019) (adopting report and recommendation); *Valasquez ex rel. Valasquez v. Berryhill*, No. CV 17-17740, 2018 WL 6920457, at *2-3 (E.D. La. Dec. 17, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 77248 (Jan. 2, 2019); *Flack v. Comm'r of Soc. Sec.*, No. 2:18-cv-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 1236097 (S.D. Ohio Mar. 18, 2019). One circuit court and a few district courts, however, have found Social Security claimants do not need to raise Appointments Clause challenges to preserve the argument for judicial review or have otherwise excused the forfeiture. *See Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020); *Ready v. Berryhill*, No. CV 18-04289, 2019 WL 1934874, at *2 (E.D. Pa. Apr. 30, 2019); *Culclasure v. Comm'r of Soc. Sec. Admin.*, No. 18-1543, 2019 WL 1641192, at *12 (E.D. Penn. Apr. 16, 2019); *Bradshaw v. Berryhill*, No. 5:18-CV-00100-RN, 2019 WL 1510953, at *2-11 (E.D.N.C. Mar. 26, 2019); *Probst v. Berryhill*, No. 5:18-CV-130-JG, 2019 WL 1749135, at *8 (E.D.N.C. March 22, 2019); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 425 (M.D. Penn. 2019); *Fortin v. Comm'r of Soc. Sec.*, No. CV 18-10187, 2019 WL 421071, at *1-4 (E.D. Mich. Feb. 1, 2019), *report and recommendation rejected in relevant part*, No. 18-10187, 2019 WL 1417161 (E.D. Mich. Mar. 29, 2019); *Muhammad v. Berryhill*, No. CV 18-172, 2019 WL 2248694,

21

at *11-12 (E.D. Pa. Nov. 2, 2018), *report and recommendation rejected*, *id.* at *3-7 (May 23, 2019).

Hall's arguments have been previously addressed (and rejected) by other courts. I adopt the reasoning of these decisions (and of the majority of courts to address the issue). I recommend finding Hall forfeited his Appointments Clause challenge by failing to raise it during the administrative proceedings.[9] I would not prohibit Hall from raising any Appointments Clause challenge on remand, however.

### III.    CONCLUSION

I recommend that the district court **reverse** the decision of the Social Security Administration, enter judgment in favor of Hall, and **remand for further proceedings**.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. **Fed. R. Civ. P. 72**. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**ENTERED** this 27th day of May, 2020.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[9] Hall requests that this case be stayed pending the Eighth Circuit decision on the Appointments Clause issue (the court heard oral argument in November 2019). As I am proceeding on a report-and-recommendation basis, I leave the decision whether to stay this case to the district court.

22